PETER A. WILSON *v.* JOSEPH SPARKS.

1. The Homestead act does not impair the obligation of contracts an is therefore not unconstitutional.

2. The Homestead is not subject to execution for the payment of debts contracted before the adoption of the Homestead act.

(*Hill* v. *Kesler*, 63 N. C. Rep.; *Garrett* v. *Cheshire*, 69 N. C. Rep. 396; *McKeathan* v. *Terry*, 64 N. C. Rep. 25, cited and approved.)

CIVIL ACTION for the recovery of land, tried before *Cloud, J.*, at Spring Term, 1874, YADKIN Superior Court.

The complaint alleges that plaintiff and others obtained a judgment against the defendant upon a note executed in 1866. That the judgment was duly docketed in the Superior Court of Forsythe county on the 13th day of January, 1869, and that it was afterwards, on the 13th day of March, 1869, regularly docketed in the Superior Court of Yadkin county. A *fi. fa.* was issued upon said judgment, and the land sold by the sheriff of Yadkin county. The plaintiff became the purchaser at the price of $130. The sheriff of said county executed a deed conveying said land to plaintiff. After the judgment was rendered, the defendant had all of said land laid off as a homestead.

The plaintiff further insisted that defendant is not entitled to said land as a homestead, because the debt upon which said judgment was rendered was contracted before the passage of the Homestead Act.

The defendant demurred to the complaint and alleged that the said homestead was legal, and the sale thereof was void. That the plaintiff had not stated facts sufficient to constitute a cause of action.

The Court below sustained the demurrer, and thereupon the plaintiff appealed.

*McCorkle & Bailey* and *Josiah Collins*, for the appellant.
*No counsel*, contra.

READE, J. I. Our statute provides that "no conveyance of land shall be good and available in law, unless the same shall be proved and registered, and all deeds so executed and registered shall be valid and pass estates in land without *livery of seisin*, attornment or other ceremony whatever." Bat. Rev., chap. 35, sec. 1.

From this it will be seen that a deed cannot be used to support a title until "proved" and "registered." It is true that when registered it relates back and "passes the estate" as of the time of its execution, just as letters of administration relate back to the death of the intestate, but in neither case does the estate pass until the deed is registered or the letters are issued.

And so in setting out title by deed of bargain and sale enrolled, CHITTY has this form: "And the said E F being so seised afterward, to wit, &c., by a certain indenture of bargain and sale, then and there made between the said E F of the one part, and one G H of the other part, which said indenture sealed with the seal of the said E F, the said G H now brings here into Court, the date whereof is the date and year aforesaid, and which said indenture of bargain and sale was afterterwards, &c., in due manner enrolled, &c., according to the form of the statute in such cases made, &c."

This form is under Statute 27, Hen. 8, Chap. 16 : "Bargains and sales shall not enure to pass a freehold unless the same be made by indenture sealed and enrolled within six months, &c."

14

In our case there is no profert or exhibit of any deed, or reference to, or offer to produce one, and no allegation that it has been registered. The only pretense of title is the declaration that he has a deed. The attention of the plaintiff's counsel has been called to this defect, and time has been allowed to amend, but no amendment has been made, and therefore we presume that the fact is as it appears to be, that the plaintiff has no registered deed, and therefore no estate in the premises upon which he can recover.

II. Another objection to the plaintiff's recovery is that the premises in dispute have been allotted to the defendant as his homestead, and therefore were not subject to sale under execution for debt. To this the plaintiff replies that the debt was contracted prior to the law allowing a homestead, and therefore the homestead law did not apply. This question has been so often decided by this Court within the last five years, that no elaborate treatment of it can be necessary in this case. *Hill* v. *Kesler*, 63 N. C. Rep., 437, is the leading case, and *Garrett* v. *Cheshire*, 69, N. C. Rep., 396, is the last case, in both of which the question is fully considered, and the last case in view of *Gunn* v. *Barry*, from Georgia, in the Supreme Court of the United States. We have uniformly admitted that the State had no power to pass a law either by statute or constitutional provision, impairing the obligation of a contract, but we have held that our exemption laws had no such intention and no such effect. We have had exemption laws for a long time, varying with the times, declaring upon their face the purpose to secure " necessaries and comforts" for families until they have become a part of the polity of the State. With us it has been no rash experiment, nor spasm of prejudice of the debtor against the creditor class, but it has had a regular growth of half a century, increasing from time to time as necessity required and as their good effects were apparent. As embodied in our Revised Code of 1854, the exemptions of personal property are by articles named ; and in many cases according to the size and circumstances of families, they might at least

equal the present exemptions. Up to 1866–'67, when we had another statute, they were increased until in many instances they might have doubled the present exemptions. And in 1868, when our present Constitution was adopted, it was provided in the Constitution that the personal property exemption should be five hundred dollars, without specifying the articles, so that it is clear that there was no purpose to defeat debts or to impair contracts so far as personal property exemptions are concerned.

Up to 1848 we had no real estate exemptions, and even a husband's interest in his wife's estate, which was for his life or for her's as the case might be, was subject to execution sale for his debts. In 1848 that interest was exempted. In 1858 we had a statute which made a further exemption of fifty acres, or a town lot of two acres not exceeding five hundred dollars in value. In 1866–'67 that was changed to an exemption of one hundred acres, without limit as to value. And in 1868, in our present constitution the real estate exemption is limited to one thousand dollars in value, for life, and in case of death with minor children surviving, until the youngest child arrives at age. So that our present exemptions are limited to $1000 in value of land and $500 of personal property. Which in many instances where families were large, is less than the exemptions have been for twenty years; and is probably not greater where families have been of the average size, as to personal property exemptions for that period.

Take the case before us; the debt was contracted in 1866. At that time the defendant was entitled under the act of 1858, to a homestead exemption of five hundred dollars value, if he had claimed under that act, and if fifty acres of his land had been worth that sum; which would unquestionably have been exempt from this debt. But our present homestead law repeals all other and prior exemptions, so that the defendant must take under the present law, or else have no exemption at all. It is true that the exemption law of 1858, while it allowed a homestead of $500 confined it to fifty acres; and here there

are four hundred and thirty-two acres, so that under that law the whole tract could not have been allotted to the defendant, although it may be worth only one hundred and thirty dollars, which is the sum at which the plaintiff bought it at the sheriff's sale ; but surely it cannot be that in establishing a polity for the general good, the Legislature can be restrained by the minor consideration of whether exemptions shall be regulated by the number of acres or by the value. The exemption must be left to the discretion of the Legislature with the single restriction that the act shall not have the intent and the effect to impair the obligation of contracts. Our exemption law had no such intent, and in legal contemplation it has no such effect.

And in the case under consideration it does not appear that the plaintiff's debt has been affected at all by the exemption, if we suppose that the Legislature had the power so to amend the homestead law of 1858, as to strike out the limit of number of acres, and let the limit of value stand as it was at $500. The exemption would then have stood " land not exceeding $500 in value." That would have covered the whole tract so far as appears before us. The whole tract sold at the sale for one hundred and thirty dollars; and while that might not have been its full value on account of the dispute about the title, yet there is not only no evidence that it was worth more, but it is not even alleged in the complaint. And we know that in the mountains large bodies of land are worth very little. If this land is worth much the plaintiff ought in fairness to have bid its value, because his debt is bated nothing, and if he gets the land clear of the homestead it ought to be at its value. But so it is, that if his bid is less than the value, and he gets the land clear of the homestead, he has his debt less the amount bid, and the land also.

At the time of the adoption of our present homestead law, it was only by a *levy* of execution that any lien was created or right vested which could affect the question. *McKeathan* v. *Terry* 64 N. C. Rep. 25.

There is no error.

PER CURIAM.　　　　　　　　　　　　Judgment affirmed.