R. F. PHIFER and others v. PAUL BARNHART, Ex'r, and others.

*Injunction— Unregistered Deed, what it conveys.*

1. In injunction, the court will require the party seeking relief to make a full discovery of the facts and use perfect candor in alleging them.

2. The bargainee in an unregistered deed has a legal title, which, though incomplete, cannot be defeated by the mere act of the bargainor in executing another deed to a third party, without notice, and whose deed is registered.

3. Although such deed cannot be given in evidence until registered, and does not therefore convey a perfect legal title, yet, when registered, it relates to the time of its execution, and the title becomes complete.

(*Morris* v. *Ford*, 2 Dev. Eq., 412; *Walker* v. *Coltraine*, 6 Ired. Eq., 79; *Wilcox* v. *Sparks*, 72 N. C., 208; *Smith* v. *Turner*, 4 Ired. Eq., 433; *Hodges* v. *Spicer*, 79 N. C., 223; *Beaman* v. *Simmons* and *Hare* v. *Jernigan*, 76 N. C., 43 and 471, cited and approved).

MOTION for injunction, in an action pending in CABARRUS Superior Court, heard at Chambers on the 10th of October, 1882, before *Graves, J.*

The motion was heard upon *ex parte* affidavits, and an injunction granted until the trial, and the defendants appealed.

*Messrs. Wilson & Son,* for plaintiffs.
*Messrs. Fowle & Snow* and *Paul B. Means,* for defendants.

RUFFIN, J. In causes of this nature it is the duty of this court to consider, not only the law governing the case, but the evidence, and to ascertain the facts. Looking to the weight of the testimony, we conceive the following facts to be established:

In 1857, Daniel Barnhart being seized of a tract of land situate in Cabarrus county and known as the "Old Barringer Place," and which was traversed by what were supposed to be two valuable gold veins, executed a deed, whereby he conveyed the said two gold veins, together with one hundred feet of land on each side thereof, and the privilege of ingress and egress, to C. H. White, Caleb Phifer and George Phifer—the said bargainees being the ancestors of the plaintiffs upon whom their rights have descended.

The said Daniel died in 1879, leaving a last will, wherein he directed his executors to sell the said tract of land, and divide the proceeds amongst his seven children, who, or their heirs, are the defendants in this action.

At the time of his death, the said Daniel was quite an old man, and for some years previous thereto had been laboring under paralysis, whereby his mind was enfeebled.

In 1877, he contracted to sell the said land, without excepting the mineral interest, to one W. A. Smith for the sum of four thousand dollars, but just before his death the said Smith prevailed with him to modify their contract, and to accept two thousand dollars from him for the land, and to convey it to one Meares, to whom Smith had contracted to sell it for four thousand dollars. This was done, and the said Meares paid one half the amount in cash and gave his note for the other half, to-wit, two thousand dollars, to Smith's wife, and gave a mortgage upon the land to secure this latter sum.

After the death of said Daniel, his executors and devisees instituted an action against Smith and wife, and Meares, wherein they consented to ratify his said sale to Meares, notwithstanding his infirmity, but alleged, as a gross imposition upon him, their inducing him to accept half of the consideration actually paid,

and it was finally so adjudged in that action; and the sum
secured in the note to Mrs. Smith was directed to be paid (and
it has been paid) into office for the benefit of the devisees, the
defendants in this action.

Smith had been entrusted by the plaintiffs with the deed to
their ancestors for the purpose of having it registered, and while
negotiating for the sale and conveyance of the land to Meares,
he caused the same to be proved before the clerk, but afterwards
removed it from the office so that its registration was never com-
pleted.   Meares had notice of this deed at the time of his pur-
chase, consulted counsel with regard to it, and was advised that
it passed no title to any one.

The plaintiffs aver that he has the deed now in his possession,
and as his whereabouts is unknown to them, the deed is thereby
lost to them ; that they are informed that he has sold the land
to parties who had no notice of the rights of the plaintiffs in the
premises; that exclusive of the minerals, and for agricultural
purposes alone, the land is not worth more than fifteen hundred
dollars, and they say they are advised that they are entitled to
have the difference between that sum and the price agreed to be
paid for the land, as representing the value of the minerals—
they offering to ratify the sale thereof to Meares or his grantee.

They also aver, that the defendants are all insolvent, and there-
fore ask that they may be enjoined from receiving any part of
the fund paid into court, until the plaintiffs can establish their
rights in the premises, which they undertake to do in this
action.

As we understand the statement of the plaintiffs' case, and the
argument of their counsel, they rest their right to the relief
asked upon the notion, that they are now precluded from assert-
ing their claim to the property itself, and this, in turn, rests upon
the proposition that the bargainee, in an unregistered deed for
land, takes but a bare equity, which may be absolutely defeated,

provided the bargainor should subsequently convey the land to another without notice of the prior instrument, and by deed registered.

The first objection which suggests itself to the equity of the plaintiffs as thus stated, is, that the evidence taken in the cause fails to establish it. Confessedly, Meares had full notice of the existence of their deed at the time he made his purchase of the land, and there is no satisfactory proof whatever that he has sold it to any one, or that his alienee, if there be such, was kept in ignorance of the plaintiffs' prior claim. There is, it is true, in one of the affidavits filed by the plaintiffs, a general allegation to the effect that they have been informed and believe such to be the case. But these are grave matters, involving the rights of parties to property, and should not be determined upon the mere impressions and belief of parties. They are expected, and indeed, required, to inform themselves diligently of the real facts of the case, and to state them with such precision as will enable the court to act upon them intelligently.

With no sort of propriety can the plaintiffs ask the court solemnly to adjudge between the defendants and themselves, upon the footing that Meares has parted with his title in a certain condition, when it may turn out that he has not parted with it at all.

By the use of the smallest degree of care, they could have known certainly, and so informed the court, whether any deed from Meares, purporting to convey the land to another, had been proved and registered in the proper office of the county, and thereby enabled us to know whether the title, which they profess to dread, really stands upon any higher ground than their own.

When we consider the improbability, not to say the impossibility, of their having that degree of information in regard to the matter which they have seen fit to disclose, without at the

same time having more accurate and minute information, we cannot avoid an impression that they are not dealing frankly in the matter.

There is, moreover, the same lack of diligence in connection with the non-production of the deed under which they claim, and the same apparent want of candor in setting out its provisions, and especially its description of the property intended to be conveyed. So far as is disclosed in the case, not a step has been taken or an effort made to secure its production, or even a copy to be used in evidence; but the parties content themselves with merely saying that Meares has it in his possession, and as he is a non-resident and his whereabouts is unknown, they consider it as lost to them.

The plaintiff, Archibald, whose affidavit was taken, admits that he once had the paper in his custody, after he had acquired his interest in the land, and should therefore accurately know its exact contents, and in law is presumed to do so. Their other witness, Smith, between whom and themselves there manifestly exists a common understanding of some sort, if not a community of interest, had full opportunity to acquaint himself with its terms; and yet, the only account of the matter given by either of these witnesses is the general one that it purported to convey the two gold veins, known to traverse the land, to the grantees named. When it was alleged, as it was in the affidavits of the defendants, that the instrument was wholly inoperative, as a deed, because of the uncertain description of its subject-matter, and that on this account it had been twice condemned by learned counsel, it plainly became the duty of the parties, in justice to the court, accurately and minutely to set out its details, and particularly to say whether the description of the interest conveyed was the same as that contained in the imperfect deed from the assignee to the plaintiff, Archibald.

When called upon to lend extraordinary relief to parties, the court has a right to look for full discovery and perfect candor on their part. It is by their non-observance of this rule that
43

the plaintiffs in this action have put themselves and their cause at some disadvantage before the court.

We do not care, however, to put our decision upon grounds personal to the plaintiffs, as we are convinced there is an error in the premises assumed by them, and upon which they have attempted to build their equity.

While many of the judges have spoken of the estate which the bargainee in an unregistered deed takes in lands, as an equity, and of the instrument itself as an executory contract, we are aware of no authority for the position that the estate thus created can be displaced, or defeated, by the mere act of the bargainor in making another conveyance to a third party without notice, and whose deed may be registered. On the contrary, whenever the question has been the subject of consideration by the court, as it has been more than once, its decisions have been uniformly inconsistent with any such idea.

In *Morris* v. *Ford*, 2 Dev. Eq., 412, it is said, that such a bargainee, after the execution of his deed and before its registration, has not a mere equity in the land: he has an equity and an incomplete legal title, which will become *a perfect legal title from the time of the execution of the deed*, whenever the registration shall take effect; and it was added that, even before the enrolment of the deed, he was tenant of the freehold and therefore a recovery under a *præcipe* against him would be good.

Again, in *Walker* v. *Coltraine*, 6 Ired. Eq., 79, it was declared to be an error to say that an unregistered deed confers only an equity; that it is a legal conveyance, which, although it cannot be given in evidence until registered and therefore is not a perfect legal title, yet has an operation as a deed from its delivery; and it was emphatically said, that the ignorance of such a title in one, who might afterwards buy the land, could not impair it.

In *Wilcox* v. *Sparks*, 72 N. C., 208, Mr. Justice READE, speaking for the court, says, that although a deed cannot be used to support a title until it is registered, still when registered it

relates, and passes the title, as of the time of its execution, just as letters of administration relate to the death of the intestate.

In *Smith* v. *Turner*, 4 Ired. Eq., 433, the facts were that the father of the plaintiff conveyed certain land to one Jones, who devised it to the plaintiff. The conveyance being lost and unregistered, a judgment creditor of the father had the land sold and it was purchased by the defendant; *Held*, that the plaintiff had a clear right to call for a conveyance from her father or from the defendant as having succeeded to the legal title; nor was the decision put upon the ground that the defendant, being a purchaser at an execution sale, was affected with the plaintiff's equity.

Equally plain are the rights of these plaintiffs. A court of equity will compel Meares, or whosoever else may withhold their deed from registration, to produce it for that purpose, or, if it has been destroyed, will require the heirs of the grantor to make another in its place, which, when registered, will relate to the execution and delivery of the first deed, and so clothe them with a title dating from that time, perfect in itself, and overlapping all intermediate conveyances. *Hodges* v. *Spicer*, 79 N. C., 223.

The authorities referred to are not in conflict with the decisions in *Beaman* v. *Simmons* and *Hare* v. *Jernigan*, 76 N. C., 43 and 471, and other cases in which it is held that, if an unregistered deed be voluntarily destroyed or cancelled under a parol agreement between the grantor and grantee, the effect will be to restore the whole estate to the former, freed from all claim of the latter. These later cases have certainly introduced a new principle into our law, which we are not disposed to push beyond the point to which it has already gone. They proceed upon the ground that, so long as the deed remains unregistered, it amounts to an executory contract merely between the parties, which they may annul by mutual agreement, though in parol; and as in such case the legal title is already in the grantor, it continues to abide with him cleared of the equitable estate of the grantee.

The plaintiffs, however, seek to carry the principle far beyond this point, and would have us hold that by their own assent,

unparticipated in by any one, they can determine their estate in the land and cast it upon those who may now hold the legal title, and demand to be paid its price.

With a full knowledge of the claim of the plaintiffs, such as it is, Meares contracted with the ancestor of the defendants, and agreed to pay him four thousand dollars for the land. In making this contract the parties did not, and could not, impair the title of the plaintiffs, and there is nothing therefore for the latter to ratify. If disposed to assert their claim to the minerals imbedded in the two veins traversing the land, the courts are open to them, and will aid them so far as to compel the production of their deed for registration, or, if destroyed, will cause its place to be supplied by another; but cannot help them to any part of the fund in question, because they have given nothing for it.

The court is of the opinion that the injunction was improvidently granted in this case, and the order to that effect is therefore reversed and the injunction dissolved. This will be certified to the end that the parties may proceed as they may be advised.

Error.                                            Reversed.