UNITED STATES *ex rel.* HUIDEKOPER *v.* MACON COUNTY COURT *et al.*,
(two cases.)

UNITED STATES *ex rel.* STRATTON *v.* SAME.

(*Circuit Court, N. D. Missouri, E. D.* March 3, 1891.)

1. ISSUE OF COUNTY WARRANTS—MANDAMUS.
    *Mandamus* having been granted requiring the county court to draw warrants in favor of relators, payable out of "the general funds of the county," the warrants were drawn accordingly, but, at relators' request, other warrants were drawn on another fund in lieu of the warrants already drawn, and were issued to relators. *Held,* that the latter warrants were issued pursuant to the writ of *mandamus.*

2. TAXATION—PAYMENT—COUNTY WARRANTS.
    Under Gen. St. Mo. 1865, c. 38, § 46, providing that county warrants are receivable in discharge of "any county or city revenue, license, tax, assessment, fine, penalty, or forfeiture," such warrants are receivable in payment of a special tax levied for payment of county bonds, though the priority in which such warrants are required by law to be paid is thereby defeated.

3. COUNTY WARRANTS—CONSTITUTIONAL LAW.
    Act Mo. Feb. 28, 1873, providing that several warrants may be issued for one claim against a county, instead of issuing a single warrant, as was provided by the existing law, does not so change the administration of county finances as to impair the remedy for the collection of outstanding warrants.

4. ASSIGNMENT OF WARRANT—PAYMENT OF TAXES.
    Where warrants have been received from an assignee thereof in payment of taxes, and such payment has been approved by the county court on the settlement of the accounts of the county treasurer, such payment will be considered sufficient, though the assignment was not in the form required by law.

Application for *Mandamus.*

These cases are *mandamus* suits, originally brought in the United States circuit court for the western district of Missouri, when Macon county was attached to that district. They were recently transferred to this court, and since the transfer certain motions have been filed therein by the relators, to which motions the respondents have filed a return. The cases have been submitted on a motion to quash the return, and also on a plea to the jurisdiction. · With a few exceptions, the material allegations of the motions are not controverted by the return; but, as the case is somewhat complicated, a statement of the material facts alleged seems to be necessary.

In the years 1875 and 1877 the relators severally recovered judgments against Macon county on coupons of county bonds issued in May, 1870, to aid in the construction of the Missouri & Mississippi Railroad. Thereafter, in September, 1879, the county court caused warrants to be drawn on the county treasurer for the amount then due on said judgments. The warrants were drawn after the issuance of peremptory writs of *mandamus* commanding the county court to draw warrants in payment of relators' judgments. It seems that the warrants as at first ordered to be drawn were made payable out of "the general funds of the county, not otherwise appropriated," that might at any time be in the treasury; but such warrants, if they were in fact issued, were soon canceled, and, in lieu thereof, other warrants were issued, at relators' request, payable out of the "Missouri & Mississippi Railroad fund," which was a special fund

by law authorized to be created by an annual assessment of one-twentieth of one per cent. on all the property in the county, to retire bonds issued to said Missouri & Mississippi Railroad Company. The warrants so drawn on the special fund were presented by the relators to the county treasurer for payment on September 27, 1879, but were not paid for want of funds, and but a small sum has as yet been paid thereon. By the laws of the state which have been in force for more than 25 years county warrants are made payable out of the fund on which they are drawn, in the order of presentation for payment. The presentment of a warrant to the county treasurer for payment, although it is not paid, entitles such warrant to be registered, and to priority of payment over all warrants that are subsequently presented. The law of the state also in force when the several debts due to the relators were contracted provided, in substance, that a county warrant drawn in payment of a claim should be for the whole amount of the claim, and that only one warrant should be drawn for the amount allowed to any person at one time, (1 Wag. St. p. 415, § 32;) but in the year 1873 the statute in question was so amended as to permit any number of warrants to be drawn, at the option of the creditor, in payment of any county debt exceeding $25, if the total sum drawn does not exceed the debt. By virtue of other provisions of the laws of the state, county warrants cannot be assigned merely by a blank indorsement, but must be indorsed in full. It is also the law that county warrants may be received in payment of taxes levied for county purposes, and county collectors are specially enjoined to receive them in payment of such assessments. Rev. St. Mo. 1889, § 3205. It is provided, however, that before the county treasurer shall receive warrants from the collector in discharge of county taxes, the latter officer shall make out a list of the warrants, verified by his oath, specifying the number and amount of the same, and from whom received, and the date of receipt, the same to be filed with and preserved by the county treasurer. Rev. St. Mo. 1879, § 5371.

The relators allege, in substance, that during the year 1889 the county court of Macon county drew a large number of small warrants, ranging in size from $1 to $40, on the special Missouri & Mississippi Railroad fund, in payment of coupons on Missouri & Mississippi Railroad bonds, which were presented to the court for allowance and payment during the year; that these warrants were duly presented to the county treasurer for payment, and the date of presentation noted thereon; and that thereafter divers and sundry tax-payers made use of the same to pay their county taxes, including therein taxes belonging to the special Missouri & Mississippi Railroad fund, on which the relators claim to have a prior lien by reason of the presentation of their warrants in September, 1879, as before stated. Relators charge that some of the warrants so used to pay taxes were not assigned in accordance with the state law to the persons who made use of the same to pay their taxes; that others were assigned to a number of tax-payers jointly, and were used by them collectively to pay the several sums due from them to the county for taxes;

that the county treasurer in his settlement with the collector received said warrants as cash, without requiring the collector to verify the list of warrants returned, as the law of the state required; and that, notwithstanding such irregularities, the county court approved the treasurer's action in accepting such warrants, whereby a large sum, to-wit, $360.37, was nominally paid into the special Missouri & Mississippi Railroad fund during the year 1889, and, in effect, appropriated to the payment of warrants drawn on said fund, long subsequent to the presentation of relators' warrants. The information further charges that the irregular proceedings last mentioned were taken by collusion between the various county officers,—to-wit, the collector, treasurer, and county judges,—to prevent the payment of relators' warrants, and to deprive them of the priority to which they are entitled; but this allegation of collusion between the county officers is explicitly denied by the respondents, the latter insisting that in all their official acts they have complied with the laws of the state, and that, if any of the warrants received in payment of taxes were not properly assigned, it was merely through inadvertence, and in no wise impaired the right of the several tax-payers who owned said warrants to use them in paying county taxes. The relief prayed for is that the court will adjudge, first, that the acts of the several respondents above mentioned are in contempt of the process of this court; that the settlement made by the county treasurer with the county court, whereby the sum of $360.37 was nominally paid into the county treasury, and appropriated on warrants issued in 1889, be set aside; that the special Missouri & Mississippi Railroad fund be charged with said sum of $360.37, and that the same be distributed among the relators; and generally the relators pray that this court, from this time forth, will take upon itself the administration of the Missouri & Mississippi Railroad fund, by requiring the county court and county treasurer to file in this court each year, until relators' warrants are paid, a detailed statement of the moneys paid into and withdrawn from said fund, and a full report of their administration of the same.

*Joseph Shippen* and *Cunningham & Eliot*, for relators.

*Ben E. Guthrie, B. R. Dysart,* and *R. G. Mitchell,* for respondents.

THAYER, J., *(after stating the facts as above.)* The first question to be considered is jurisdictional.

1. The respondents apparently concede, and for present purposes I shall assume, that the court has power to entertain these motions if the warrants now held by relators were issued in obedience to process of the United States circuit court for the western district of Missouri. I shall assume that relators are right in asserting that an unlawful act or series of acts committed by county officers with intent to defeat the payment of county warrants, which they have been compelled to issue by the mandate of a court of competent jurisdiction, amounts to a contempt of its authority, and may be so treated. The respondents contend, however, and this seems to be the only ground of their objection to the jurisdiction, that the warrants here involved were not issued in obedience

to judicial process of any sort; that they were drawn by the county court of Macon county merely at the request of the relators, and are in no sense the outcome of the *mandamus* proceedings in which the motions have been filed.    If the facts are as they aver, I have no doubt that the objection to the jurisdiction is well taken.    I can conceive of no ground on which the court, upon a mere motion filed in these cases, could inquire into the various acts complained of, or undertake to afford redress for the alleged wrongs, unless it be on the ground that the relators' warrants were obtained by means of process issued in these suits, and for that reason are entitled to protection by further supplementary proceedings had therein.    But the assumption that relators' warrants were not issued in obedience to writs of *mandamus* does not seem to be well founded.    The contention is based solely on the fact that the relators petitioned the county court to draw warrants on the special Missouri & Mississippi fund, in payment of their judgments, after the court had ordered warrants to be drawn on the "general fund," and that the court granted such request.    This fact, it is urged, places the warrants now held by relators on the same footing with warrants drawn by the county court of its own volition, in the ordinary exercise of its auditing powers. But it does not appear, and the return does not allege, that the relators ever accepted the warrants as originally drawn on the general fund as a compliance with the writs of *mandamus*, or that such warrants ever passed out of the possession of the county.    The fact is that relators' warrants were issued "in lieu" of those originally ordered to be drawn, and that the relators accepted them as being in compliance with the writs of *mandamus*.    The first warrants were not paid, as respondents' attorneys contend, by the issuance of the second warrants.    The order of the county court merely provided that warrants on the Missouri & Mississippi fund should be issued in lieu of those previously ordered to be drawn, the intent being evidently to substitute the former for the latter, and thereby comply with the writs of *mandamus* in a manner satisfactory to the relators.    The warrants issued to the relators were also drawn on a fund that was properly applicable to the payment of their judgments, and the drawing of warrants on the Missouri & Mississippi fund was a substantial compliance with the writs of *mandamus*.    If the relators saw fit to demand warrants on that fund, and the county court thought proper to accede to the request, both parties intending that the act done should be accepted as a compliance with the writs of *mandamus*, the court should so treat it, and thus give effect to the intent of the parties.    Viewing the matter in that light, I accordingly hold that relators' warrants were obtained by virtue of process heretofore issued in these suits, and that the plea to the jurisdiction of the court should be overruled.

2. It accordingly becomes necessary to consider the motions on their merits.    The return admits that respondents have done the several acts complained of, but denies that the acts done are illegal, or that they have been done with intent to defeat the payment of relators' warrants.    Therefore the motion to quash raises the question whether such acts are lawful or unlawful.    Furthermore, the motion to quash the return is an ad-

mission of all material matters of fact therein alleged; and, as the return avers that the respondents have neither combined nor conspired to obstruct the collection of the relators' warrants, but in all of their official acts have endeavored to comply with the laws of the state as by them understood, it must be taken for granted on this hearing that such is the fact.

There appear to be three grounds on which the official action heretofore taken by the respondents is challenged. In the first place, it is said that they had no right to receive county warrants in payment of the special Missouri & Mississippi Railroad tax of one-twentieth of one per cent., and that their action in this respect was unlawful. This claim, however, is not made with much apparent confidence, and in my judgment there is no ground upon which it can be sustained. The fact is that county warrants have been receivable for county taxes for more than 25 years. Gen. St. Mo. 1865, c. 38, § 46, p. 232. Such was the law when relators' bonds were issued, and the statute is very general in its terms. County warrants are made receivable in discharge of "any county or city revenue, license, tax, assessment, fine, penalty, or forfeiture." Language could hardly be made more comprehensive. It has been the common practice for many years to receive county warrants in payment of county taxes of every description, and I am not aware that the practice has ever been called in question. It is argued that by permitting taxes belonging to the special Missouri & Mississippi fund to be paid in warrants, the preference by law accorded to warrants first drawn thereon and registered, may be defeated. This is no doubt true, but it is equally true of warrants drawn on all other funds. The practice of receiving warrants for county taxes tends to defeat the payment of warrants in the order of priority, no matter on what fund they are drawn. Relators have no more reason for saying that warrants are not receivable for taxes belonging to their fund because such practice defeats priority than the holders of warrants drawn on other funds. Therefore, the argument employed is entitled to no weight, and must be overruled.

It is next contended that by the law enacted February 28, 1873, (Sess. Laws. Mo. 1873, p. 30,) permitting county warrants to be subdivided, so changed the law with respect to the administration of county *finances*, and so impaired the remedy for the collection of the relators' debts, which was in force when the debts were contracted,—that such law is inoperative as to them. They accordingly claim that the respondents' action was illegal in accepting in payment of taxes due to the Missouri & Mississippi fund warrants that had been subdivided into small sums, pursuant to the act of 1873. I am compelled to hold that that this position is untenable. In my judgment it is not supported by either of the decisions cited by relators' attorneys, to-wit, *Von Hoffman* v. *Quincy*, 4 Wall. 535, and *Edwards* v. *Kearzey*, 96 U. S. 595, or by any of the authorities therein referred to. The act of 1873 did not attempt to alter the obligation of the county on any of its outstanding contracts, or to change the remedy for their enforcement. It facilitated to some extent the use of county warrants in paying county taxes, and this is all that can be alleged against it.

Under the law as it stood in 1870, when the relators' bonds were issued, it was possible to make use of county warrants in payment of taxes quite as extensively as they may now be used under the act of 1873. The law at that time permitted them to be assigned, and did not limit the number of persons who might be named as assignees. A number of joint assignees of a warrant might lawfully use the same to pay taxes severally due from them to the county. No law of the state then or now in force, so far as I have been able to find, either in express terms or by necessary intendment, prohibited such a practice. For some reason— very likely to facilitate the transaction of business in some of the poorer counties of the state, where warrants were in common use—the legislature saw fit to pass the act of February 28, 1873, which I think it clearly had the right to do, inasmuch as it did not thereby interfere with any vested rights.

It is finally urged that the respondents violated the law in accepting warrants in payment of taxes due to the Missouri & Mississippi fund that were not properly assigned. It is said that the collector violated the law in receiving such warrants for taxes, that the treasurer violated the law in accepting them from the collector as money without a sworn list, and that the county court violated the law in approving the treasurer's settlement. It is undoubtedly true, as relators contend, that the legal title to a county warrant does not pass unless it is assigned by a full indorsement, in the mode provided by statute. It is also probably true that the statute contemplates a legal, rather than an equitable, assignment of a warrant, before it may be used by an assignee in payment of county taxes. There is not even a suggestion in these motions, however, that the various tax-payers who used warrants to pay taxes were not in good faith the equitable owners thereof; and, furthermore, it is shown both by the motions and the return, that the action taken by the collector and treasurer in the matter now under consideration was approved by the county court, acting in a judicial capacity, when the county treasurer made his annual settlement. Under these circumstances the court can grant no relief, even though some warrants were received in payment of taxes that were not regularly assigned, and even though the list returned by the collector to the treasurer was not properly verified. In the case of *State* v. *Winterbottom*, 123 U. S. 215, 8 Sup. Ct. Rep. 98, it was expressly held that it was competent for the county court, in its settlement with the county treasurer or collector, to waive all such irregularities in the mode of receiving warrants in payment of county taxes as are here complained of. Referring to the collector, and his right to receive warrants in payment of taxes, the court said:

"He had a right to receive county warrants in payment of taxes. The law * * * declares it to be his duty to receive them. Whether they were received by him under the exact circumstances which the law directs as to original ownership or assignment to the party who presented them were matters for which he might have been called to account by the county court, and that body, in making the settlement with him, might possibly have had the power to reject the warrants so received in making up the account; but, inasmuch as they were actual obligations of the county, payable out of the county funds,

and receivable in payment of taxes, if properly tendered, the county court * * * could waive any such irregularity in the time and mode of presenting their own obligations, and credit the collector with them in the account."

There seems to be little need of pursuing the subject further. The only acts complained of that could possibly be regarded as entitling the relators to any of the relief sought in this proceeding, are those last considered, and it seems that they are mere irregularities, which the county court has the power to waive, and has already waived by approving the treasurer's settlement.

It also stands admitted by the motion to quash that the action of the county court in waiving such irregularities was not due to any fraudulent combination to injure the relators, but was done in the exercise of a sound judicial discretion reposed in that body. From any point of view, therefore, the return made by the respondents is sufficient, and the motions to quash must be overruled. It is so ordered.