506 P.2d 809

Edna L. KOPP, Plaintiff and Respondent,

v.

SALT LAKE CITY, a municipal corporation of the State of Utah, Defendant and Appellant.

No. 12999.

Supreme Court of Utah.

Feb. 14, 1973.

Jack L. Crellin, Salt Lake City Atty., O. Wallace Earl, Salt Lake City, for defendant-appellant.

Robert D. Moore, of Rawlings, Roberts & Black, Salt Lake City, for plaintiff-respondent.

CROCKETT, Justice:

Salt Lake City appeals from a judgment of the district court which awarded plaintiff Edna L. Kopp, an employee in its police department, a judgment of $9,091.50, on the basis of the differential in pay between herself and regular policemen doing the same work, for the period between July 1, 1965, and the 15th day of January 1970.

■ The purpose of the Antidiscrimination Act [1] is to eliminate discrimination in the payment of wages based solely on the basis of sex where men and women are doing the same or similar work under all of the same conditions. We agree that that is a salutary and proper purpose. In that connection it is of interest to note that the Constitution of the State of Utah has, since statehood, contained in Article IV, Sec. 1, the following:

> The rights of citizens of the State of Utah to vote and hold office shall not be denied or abridged on account of sex. Both male and female citizens of this State shall enjoy equally all *civil, political* and *religious* rights and privileges.

---

1. Utah Antidiscrimination Act, Secs. 34–35–1, U.C.A.1953, et seq. (Pocket Supp.) ; Sec. 34–35–6 of which provides: "(1) It shall be a discriminatory or unfair employment practice: (a) For an employer . . . to discriminate in matters of compensation against any person otherwise qualified, because of . . . sex . . . ." The Federal Equal Pay Act of 1963, 29 U.S.C. § 206(d)(1), is generally similar.

This clear and comprehensive statement in our foundational law correlates with the purpose that there shall be no discrimination based on sex.

The problem in this case is whether there has been a differential in pay based solely on that factor. Or, to state it another way: could a man, who was hired and engaged in work as was plaintiff, alongside police officers, demand the same salary as the latter.

Plaintiff commenced her employment as a clerk-typist in the police department in December of 1961. After about six months, in May of 1962, she was assigned to work in the "dispatch office." As time went on there occurred a change in her work. She answered the phone and gave "dispatch" directions by radio to officers in the field. Pursuant to the initiation of proceedings before the Industrial Commission under the Utah Antidiscrimination Act, that Commission on January 13, 1970, made findings that there had been discrimination against the plaintiff on the basis of sex and ordered that she be paid the differential in salary above referred to.

Defendant City petitioned for a review and trial de novo in the district court as permitted by Sec. 34–5–8, U.C.A.1953. Upon such trial the court found in accordance with the determination that had been made by the Industrial Commission:

That the plaintiff between the dates of July 1, 1965 to and including the 15th day of January, 1970 was employed by the defendant as a dispatcher in the Salt Lake City Police Department.

That the plaintiff performed the same services . . . [which] . . . involved the same skill, effort and responsibility as the male employees, * * * but [she] received as compensation a substantial lower amount than the male employees.

Consistent with the findings just quoted, the plaintiff's brief states her position that "she was actually performing the same work and had the same duties as male employees" and argues that she was therefore entitled to the same compensation. This position and the findings upon which she relies are based on the false premise that the sole test to be applied was whether women did the same work with the same skill and competency as men. Even if employees are ostensibly doing the same work alongside each other, in setting their salaries there are other valid and essential criteria. These include the class or grade of the employee, his seniority, and the degree of responsibility he is required to assume. In order to be eligible to become a police officer a person must have certain qualifications as to citizenship, age, moral character, and must meet specified physical, mental and educational standards. He must complete and pass a course of training, after which he is duly certified and sworn in as a police officer, and progress-

es in salary schedule according to his seniority and rank. The duties of the many police officers on the force are numerous and varied. The officers themselves, of differing ranks, ranging through the several grades of patrolman through sergeant, lieutenant, captain, and so forth, are at times doing the same work at different rates of pay.

▮ The peace and good order of society is dependent to a great extent upon the efficiency and integrity of police services. It is therefore one of the most essential and important of governmental responsibilities. The history of the cities of our country is replete with examples of manipulation, intrigue and chicanery in police departments. It is for this reason that the Civil Service and sets of rules have been developed over the years respecting the selection, classification, and protection of police officers. For the reasons just stated, neither other governmental agencies nor the courts should interfere with the internal management of police departments except in extreme exigencies. It is readily to be seen that if a police chief or other administrator could simply hire any employee he desired, put him to work alongside employees who had gone through the process of qualification and classification, allow the latter to work for months or years, and then insist upon the same pay as the duly qualified officer, the system could be disrupted into a shambles.

▮ Based on what we have said herein it is our conclusion that the test as to discrimination in rate of pay cannot properly be based solely upon whether the plaintiff was doing the same work, and/or with the same degree of competence as other employees, but can also be determined on the basis of classification, seniority and other factors, as we have discussed above;[2] and further that it has not been shown that Salt Lake City discriminated against the plaintiff by paying her a lower salary solely on the basis of sex. Accordingly, there is no proper foundation for the judgment.

▮ There are other considerations which we deem pertinent to the problem here involved and supportive of the decision we have reached. The mere mention of principles of simple honesty and of equity should be sufficient without elaboration. The plaintiff was fully aware of her working conditions and of the salary ($450 per month at the time of the hearing) which she was accepting without complaint month by month for the several years before this proceeding was initiated. We realize that the doctrines of laches and/or estoppel may not be applicable in some situations of

---

2. That job requirements should be viewed as a whole, including previous experience and training see statement in Shultz v. Brookhaven General Hospital, D.C., 305 F.Supp. 424; and Wirtz v. Wheaton Glass Co., D.C., 284 F.Supp. 23.

this character where it is clear that a penalty provided by statute is applicable. Nevertheless, under the facts of this case they should not be entirely ignored. The obligation placed upon the City by this judgment could not be other than a penalty created by statute. Such penalties are not favored in the law and are applied only when the fact situation clearly justifies invoking the mandate of the statute.

The remedial section of this Act, 34–35–7(12), states that when the Commission finds discrimination it shall issue an order

. . . to cease and desist from such discriminatory or unfair employment practice and to take such affirmative action, including, but not limited to, hiring, reinstatement, or upgrading of employees, *with or without back-pay*, . . . *as in the judgment of the commission* will effectuate the purposes of this chapter.

The imposition of the penalty of paying back-wages thus appears to be discretionary. In such instance the doctrines of equity just mentioned should be given at least some consideration. These ideas corroborate our answer to the question posed at the beginning: that there is no basis upon which a man employee in plaintiff's position could have insisted upon the same salary as a police officer.

The disposition of the principal issue in this case as hereinabove indicated renders it unnecessary for us to determine other issues raised by defendant as to whether the Commission: (1) abused its discretion and/or exceeded its authority in awarding back-pay instead of simply issuing a cease and desist order as to discrimination; (2) whether if the Act is so applied it violates Article VI, Sec. 29, of the Utah Constitution which provides:

The legislature shall not delegate to any special commission . . . any power to make, supervise or interfere with any municipal improvement, money, property or effects . . . or to perform any municipal functions;

and (3) the alleged improper basis of computing pay differential; and (4) the applicability of statutes of limitations, Sec. 78–12–1 et seq. (All emphasis added.)

The judgment is reversed. No costs awarded.