**BEEHIVE MEDICAL ELECTRONICS, INC., now known as Beehive International, Plaintiff and Appellant,**

v.

**The INDUSTRIAL COMMISSION of Utah, and Belva Alsop, Defendants and Respondents.**

**Nos. 15062, 15127 and 15203.**

Supreme Court of Utah.

July 20, 1978.

---

C. Keith Rooker and Dale A. Kimball, of Martineau & Maak, Salt Lake City, for plaintiff and appellant.

Robert B. Hansen, Atty. Gen., Joseph P. McCarthy, Jack L. Crellin, Asst. Attys. Gen., Dwight King, Salt Lake City, for defendants and respondents.

WILKINS, Justice:

All statutory references are to Utah Code Annotated, 1953, as amended, unless otherwise indicated.

Defendant, Belva Alsop (hereafter "Alsop"), commenced this action below claiming a violation under the Utah Antidiscrimination Act, Chapter 35, Title 34 (hereafter "Act"). On September 4, 1974, she filed a complaint, pursuant to Sec. 34–35–7, claiming sex discrimination in rate of pay between herself and several men who were hired to do the same work that the defendant did. On April 28, 1975, the original hearing in this matter was held before a hearing examiner of the Industrial Commission of the State of Utah. On May 8, 1975, the hearing examiner made findings of fact and conclusions of law in favor of Alsop. In its order dated July 8, 1975, the Industrial Commission adopted the findings of fact and conclusions of law of the hearing examiner and from its order Plaintiff Beehive Medical Electronics, Inc., now known as Beehive International, (hereafter "Beehive"), appealed to the District Court of Salt Lake County for a trial de novo.

The trial de novo commenced on January 24, 1977, and on March 11, 1977, the District Court entered judgment affirming the findings of fact and conclusions of law of the Industrial Commission by determining that there had been discrimination against Alsop. Judgment was granted in favor of Alsop in the sum of $4,326.80, representing the differential in pay arising out of the discrimination. Beehive was ordered to cease and desist from discriminating against the defendant at the place of her employment on the basis of her sex, and was ordered to pay her the same rate of pay as was being paid to her male counterparts who were doing the same work. Beehive was further ordered to refrain from taking any retaliatory action against the defendant for her action in filing the complaint with the Industrial Commission of the State of Utah or for pursuing her legal rights in Court.

On April 26, 1977, a hearing was held before the District Court based upon an Order to Show Cause, following which the Court entered an order, dated May 3, 1977, adjudging the plaintiff to be in contempt of court for violating the antiretaliatory and antidiscriminatory provisions of the March 11, 1977 judgment. Plaintiff Beehive appeals from the judgment and orders above.

Alsop was employed by Beehive in February of 1972 as an expediter in the material supply organization of Beehive. In November of 1972 she began to function in the purchasing phase of the material operation. She worked in that activity for a period of time and then moved to an assignment as the stores supervisor for the company for a short period of time. She returned to work in the purchasing phase until she had health problems. Then on August 5, 1974, she re-commenced work in the purchasing phase of the company activities.

The District Court in findings dated March 11, 1977, found that Beehive had discriminated against Alsop on account of her sex, in violation of Sec. 34–35–6(1)(a), by paying her a lower wage than was paid to her male counterparts in positions which were similar and comparable to the work which Alsop performed for Beehive; that Beehive also discriminated by failing to credit Alsop with on-the-job experience and training in determining her wage and job title while concurrently crediting her male counterparts with such experience and training; that Beehive discriminated against Alsop by establishing, creating and utilizing what amounted to fictitious job titles and job levels as a basis for justification for paying her a lower wage than her male counterparts, when the actual respective duties of Alsop and her male counterparts were not significantly or materially different and further, the male counterparts did not require a level of skill higher than that at which Alsop was actually performing.

The Court granted judgment in favor of Alsop for $4,326.80, which represented the sum of differential pay to which she was entitled from August 5, 1974 to February 28, 1976 in her employment, thereby compensating her for deprivation of equal pay, employment status and classification in violation of the Act. The Court also in the March 11, 1977 judgment ordered Beehive to cease and desist from further discrimination against Alsop and additionally prohibited Beehive from retaliatory action against her for bringing this action.

■ Plaintiff assigns a number of errors infra to which we address ourselves. Additional facts will be recited in the assignments of error to which they pertain. Beehive contends that the hearing before the Industrial Commission was unlawful and invalid because an attorney for the Commission did not present the case in support of Alsop's complaint. It cites as authority for this position Sec. 34–35–7(7), which provides that:

> The case in support of such complaint shall be presented at the hearing by one of the commission's attorneys or agents.

. . .

Section 34–35–7(8) specifically states in pertinent part:

> . . . In the discretion of the hearing examiner, a complainant may be allowed to intervene and present testimony in person or *by counsel.* [Emphasis added.]

It was therefore not improper for Alsop to present testimony either personally or by counsel during the proceedings before the hearing examiner. Other grounds exist for our determination that this contention is unmeritorious but need not be specified as the preceding comments are dispositive.

■ Beehive asserts that it was error to refuse a jury trial in District Court. Beehive argues that because Section 34–35–8(12) of the Act reads as follows:

> The provisions of the Utah Rules of Civil Procedure, so far as applicable, and not in conflict with this chapter, apply to proceedings in the courts under the provisions of this chapter.

that nothing in the Act specifically negatives the right to jury trial, and that, therefore, Rule 38 of the Utah Rules of Civil

Procedure governs.[1] Beehive further cites Article I, Section 10, of the Constitution of Utah and the Seventh Amendment of the Constitution of the United States as additional authority for its position.

We believe Beehive's second point is without merit. Sec. 34–35–8(6) states:

> Upon the conclusion of a trial de novo in the district court or other proceedings which appropriately dispose of all issues of fact and of law, *the district court shall enter findings of fact, conclusions of law and judgment and decree,* which shall be subject to enforcement upon the application of the commission or any party to the judgment. The parties may waive findings of fact and conclusions of law. The judgment entered in the district court shall supersede any order made by the commission. [Emphasis added.]

By providing that the District Court shall enter its findings of fact in such cases, the Legislature clearly intended that the court, not a jury, be the fact finder on appeal in antidiscrimination cases, and the provisions of Rule 38 pertaining to jury trials are not applicable to these proceedings. Also the provisions in Utah's Constitution pertaining to trial by jury are not offended in this case as the proceedings here were essentially equitable.[2] Further, Beehive admits that the United States Supreme Court has not specifically extended the right to a trial by jury in civil actions to the States, to which we agree. Further the Seventh Amendment speaks of "Suits at common law", and we perceive no basis for determining that the proceedings applicable in this case existed at common law.

■ Beehive assigns as further error that it could not be found guilty of contempt of court for discharging Alsop as it found that Mr. Maeser, a Beehive official who terminated Alsop, did not violate the Court's antiretaliatory order pertaining to and protecting her.

The effect of Beehive's contention, were we to adopt it, which we do not, would be that so long as a company official authorized to terminate employees does not personally violate an antiretaliatory court order, company discrimination and retaliation through other company employees against workers who assert their rights under the Act would not constitute contempt of court, and the enforcement power of this type of order would be emasculated and the purposes and policies of the Act would be thwarted to a large degree. The company official authorized to terminate employees is not the exclusive source of retaliation and discrimination which may exist in a business. Employer retaliation and discrimination, violative of court orders, may be inflicted by employees other than the company official authorized to terminate workers. In the instant case the District Court found that the conduct of Mr. Maeser did not violate the antiretaliatory order but rather that the actions and conduct of Mr. Lamb, an employee of Beehive and Alsop's immediate supervisor, were retaliatory and consequently violative of the Court order.

■ Beehive also contends that the District Court erred in ordering reinstatement of Alsop or payment of wages in lieu thereof after her discharge on March 24, 1977. After her discharge, with insubordination assigned as the cause therefor, an order was immediately served on Beehive, supported by Alsop's petition, ordering Beehive to appear in Court to show cause why it should not be found in contempt thereof for disobeying prior orders of the Court relating to the employment of Alsop, why Alsop should not be awarded her earnings during the period she is "kept off the job by the conduct" of Beehive, and why economic sanctions should not be imposed against Beehive for its disobedience of the Court's prior orders. The Court hearing was held on April 26, 1977. The Court found, after this hearing, that Alsop's discharge was without cause, retaliatory, and hence in disobedience

---

1. Rule 38 provides: "The right of trial by jury as declared by the Constitution or as given by statute shall be preserved to the parties."

2. It is the protection and enforcement of important personal and civil rights that establish these proceedings as basically equitable. See 27 Am.Jur.2d, Equity, Sec. 66.

of its prior orders. It awarded Alsop damages of $792 from her date of discharge to the date of the hearing, which represented her loss of earnings during that period. Additionally, the Court stated "that for each day that (Beehive) continues to disobey the orders of the Court, it is guilty of a contempt of court. Each day's disobedience constitutes a separate contempt and it is the order of the Court that a fine of $200 per working day, that is four days per week, aggregating the sum of $800 per week, be levied, which said fine shall continue as long as (Beehive's) contemptuous conduct continues." And finally the Court ordered that Beehive pay Alsop $180 per week, less normal deductions, in lieu of re-employment. In the order, dated May 3, 1977, the Court ordered Beehive to permit Alsop to return to her employment or to pay her the wages which she was paid on the day of her discharge. On May 5, 1977, Beehive, by pleading, elected to compensate her in lieu of employment at the rate she was paid on that date, without prejudice to Beehive to claim error concerning this and other matters.

Plaintiff asserts, in effect, that the sole means of enforcing the Court order is the statutory sanction for contempt and that the remedies ordered are within areas of jurisdiction reserved to the Industrial Commission, not the District Court. Noting that part of Sec. 34–35–8(6), noted ante, which provides that: "The judgment entered in the district court shall supersede any order made by the commission.", it would be illogical to assert that the District Court's judgment could supersede any order made by the commission if the sole method of court enforcement were the statutory sanction of contempt while the commission is empowered by Sec. 34–35–7(12) to:

. . . issue and cause to be served upon such respondent an order requiring such respondent to cease and desist from such discriminatory or unfair employment practice and to take such affirmative action, including, *but not limited to,* hiring, *reinstatement,* or upgrading of employees, with or without backpay, the referring of applicants for employment

by any respondent employment agency, the restoration to membership by any respondent labor organization, the admission to or continuation in enrollment in an apprenticeship program, on-the-job-training program, or a vocational school, the posting of notices, and the making of reports as to the manner of compliance, . . .. [Emphasis added.]

The District Court is not limited to the statutory sanction for contempt as the sole means of enforcing its judgments and orders in antidiscrimination cases. Rather, the powers granted by statute to the Industrial Commission may also be exercised by the District Court in these cases at the trial do novo. And those powers are buttressed by Sec. 78–32–11 which provides:

If an actual loss or injury to a party . . . is caused by the contempt, the court, in addition to the fine or imprisonment imposed for the contempt or in place thereof, may order a person proceeded against to pay the party aggrieved a sum of money sufficient *to indemnify him.* . . .. [Emphasis added.]

Beehive contends that the penalty of two hundred dollars per day levied by the District Court is unlawful because it operates prospectively and it is in excess of the maximum permitted under Sec. 78–32–10. That section provides in part:

. . . if it is adjudged that he [the person proceeded against] is guilty of the contempt, a fine may be imposed upon him not exceeding $200, or he may be imprisoned in the county jail not exceeding thirty days, or he may be both fined and imprisoned . . ..

In this action the District Court found that the acts of Beehive toward Alsop constituted contempt. Having elected to levy a fine as the penalty, the Court under the statute could have imposed a fine of up to $200. The Court, however, ruled that Beehive would be guilty of a separate offense of contempt for each day *after the date of the order* that Beehive failed to reinstate Alsop or compensate her in lieu thereof and imposed a fine of $200 per working day as a penalty.

In making its order, the District Court exceeded its authority in two ways. First, it levied a fine of over $200. Second, it levied a penalty prospectively for acts that had not taken place.

The contempt statute provides for certain formal procedures that must be followed before a penalty can be imposed. When an alleged contempt is not committed in the immediate view and presence of the Court, the person accused appears before the Court, and the Court thereupon must proceed to investigate the charge, and must hear any answer which the person arrested may make to the same. Sec. 78–32–9. The determination of guilt is made by the Court upon the answer and evidence taken at the hearing. Sec. 78–32–10. The District Court in this action, however, ruled not only that action not yet taken would constitute an offense, but also that Beehive must pay a fine for that action. In so doing, the District Court was in error. Further, the Court misconstrued the penalty provision of the statute by imposing a penalty of $200 each day. The Court, having found plaintiff guilty of contempt, could lawfully have imposed a fine of up to $200, but under these circumstances, no more.

As noted ante, the District Court ordered that Beehive pay Alsop $180 per week less normal deductions, in lieu of reinstatement. Sec. 34–35–7(12) allows the issuing of orders promotive of affirmative action in cases of discriminatory and unfair employment practices as will "effectuate the purposes of this chapter". We have heretofore declared that actions under the Act are essentially equitable. It is in this vein that our comments are made on this point.

■ Sec. 34–35–7(12) refers specifically to reinstatement as an affirmative action and we herein hold that payment in lieu thereof is also under proper circumstances an affirmative action though not specifically listed in said section as one. This section acknowledges the need and desirability of affirmative actions other than those stated with specificity by employing the language of " . . . affirmative action, including,

but not limited to . . . ". We feel it would impair the efficacy of the Act to acknowledge reinstatement as an affirmative action but not at times its logical alternative, viz., payment in lieu thereof, if an equitable solution so requires. We affirm the District Court in permitting payment in lieu of employment in *this* case as the bitterness (reflected in the record) engendered between the parties would otherwise we believe sow seeds for a mutually destructive relationship, and hence promote continuous future litigation. Of course, payment in lieu of reinstatement would not always be an acceptable affirmative action; we perceive under certain circumstances that reinstatement should be mandated with no alternative.

When, however, payment in lieu of reinstatement is ordered as a remedy, guidelines must be set in order to achieve an equitable solution consistent with the purposes of the Act. We therefore hold here that there must be a termination of payment to Alsop after a reasonable period of time from the remand of this case to the District Court; that Alsop must pursue reasonable diligence after said remand to seek employment for which she is qualified and at a salary commensurate with her skills; that the pay of $180 per week, less normal employee deductions (as ordered by the District Court) must also be diminished after remand by earnings Alsop receives from other employment or unemployment compensation, if any, during her period of payment under Court order; and the adoption of other relevant factors to which the individual facts and equities lend themselves.

■ Beehive also asserts that the findings of the District Court are not supported by substantial or competent evidence and it alleges in essence, alternatively, that those findings are against the clear weight of the evidence. We hold that the findings are supported by competent and substantial evidence and, under equitable principles of review, we further hold that the evidence does not clearly preponderate against the

District Court's findings as is required for a reversal in equity cases.[3]

■ Beehive finally contends that the Utah Antidiscrimination Act as construed and applied by the District Court violates the Due Process Clause of the Utah Constitution, Article I, Section 7; the Due Process Clause of the Constitution of the United States, Amendment XIV, Section 1; and the Contract Clause thereof, Article I, Section 10. Specifically, it contends that the Act, as applied and construed in this case fulfills no legitimate state objective, and is beyond the Legislature's police power. We disagree.

The legislative mandate in the Act not to discriminate, inter alia, against one on the basis of sex is in harmony with and fulfillment of the Constitution of Utah, Article IV, Section 1, which declares:

The rights of citizens of the State of Utah to vote and hold office shall not be denied or abridged on account of sex. Both male and female citizens of this State shall enjoy equally all civil, political and religious rights and privileges.

And this constitutional declaration is the matrix for achieving the goal of abolishing discriminatory practices—which ought to be abolished though at times they may have the seemingly appealing aspect of benignity.

In *Kopp v. Salt Lake City,* 29 Utah 2d 170, 506 P.2d 809 (1973), this Court denied relief to a woman claiming a violation of the Act on the basis that there had in the fact situation of that case been no discrimination against her though she was paid a lower wage than her male counterparts. Though the Court did not address the issue of the Act's constitutionality—or the unconstitutionality of the *application* of the Act— as Beehive urges here—it is significant that this Court did state:

The purpose of the Antidiscrimination Act is to eliminate discrimination in the payment of wages based solely on the basis of sex where men and women are doing the same or similar work under all of the same conditions. We agree that that is a salutary and proper purpose. In that connection it is of interest to note that the Constitution of the State of Utah has, *since statehood,* contained . . Article IV, Sec. 1 . . .

This clear and comprehensive statement in our foundational law [Art. IV, Sec. 1] correlates with the purpose that there shall be no discrimination based on sex. [At 506 P.2d 809–810, emphasis added.]

■ One other matter concerning constitutionality should be mentioned. If we assume, arguendo, that there is irreconcilability between two provisions of the Constitution of Utah, viz., Art. IV, Sec. 1, ante, and Art. I, Sec. 18[4] which states:

No . . . law impairing the obligations of contracts shall be passed.

then Art. IV, Sec. 1 must prevail as the more precious right in our basic law. All fundamental rights—including obligation of contract—remain, we believe, in peril or unfulfillment when invidious discrimination is permitted by law, notwithstanding any seeming winsomeness of argument which suggests vindication for that discrimination.

■ However, we do not believe there is any tension between Art. IV, Sec. 1 and Art. I, Sec. 18 of Utah's Constitution. It has always been recognized that a contract contains, implicitly, the laws existing at the time it is completed. See *Quagliana v. Exquisite Home Builders, Inc.,* Utah, 538 P.2d 301 (1975); *Edwards v. Kearzey,* 96 U.S. 595, 24 L.Ed. 793 (1878).[5] It has also long been recognized that the "impairment of obligation" provision of the United States Constitution (and similarly that of

---

**3.** *Nelson v. Nelson,* 30 Utah 2d 80, 513 P.2d 1011 (1973).

**4.** Cf. Constitution of the United States, Art. I, Sec. 10: "No State Shall . . . pass any . . . Law impairing the Obligation of Contracts . . . .".

**5.** The contract here was made after the statute was enacted in 1969. As such the contract implicitly contains the challenged provisions of the Act.

Utah's Constitution) is not to protect future contracts but rather those existing prior to the enactment of the challenged statute. These provisions do not establish a right of parties to make contracts that are illegal and against public policy. They merely prevent "impairment" by a changing of the laws *after* the contract has been made. *Ogden v. Saunders,* 12 Wheat. 213, 25 U.S. 213, 6 L.Ed. 606 (1827); *Edwards v. Kearzey,* supra, 96 U.S. 595.

Utah's Antidiscrimination Act finds nourishing validity in Art. IV, Sec. 1 of this State's Constitution and we know of no other provision in the Constitution of Utah or the United States which impoverishes that validity, including those provisions cited by Beehive, ante.

Sec. 34–35–6(1)(a) states:

. . . "To discriminate in matters of compensation" means the payment of differing wages or salaries to employees *having substantially equal experience, responsibilities, and competency for the particular job.* . . . [Emphasis added.]

In this case, it is significant to note that the findings of the District Court, and particularly the ones specified in the findings of March 11, 1977, demonstrate that Alsop suffered discrimination in pay though she had "substantially equal experience, responsibilities, and competency for the job" which her male counterparts, or more precisely one male counterpart, a Mr. Kenneth Edwards, possessed.

This case is remanded to the District Court for a further hearing concerning the matter of payment to Alsop in lieu of reinstatement consistent with this opinion. Affirmed in all other matters except the order concerning the fining of Beehive prospectively, discussed ante, which is reversed.

Costs are awarded to Alsop and against Beehive.

MAUGHAN and HALL, JJ., concur.

ELLETT, Chief Justice (dissenting).

It is my opinion that the statute runs counter to the provisions of our state constitution, Article I, sec. 1 of which provides:

All men have the inherent and inalienable right to enjoy and defend their lives and liberties; to acquire, possess and protect property; . . .

Our Court addressed this provision in the case of *Golding v. Schubach Optical Co.*[1] wherein it was said:

. . . The Constitution declares in article 1, § 1, men are by nature free and independent, and have certain inalienable rights among which are the pursuing and obtaining of happiness, and safety, and property. *These rights are invaded when one 'is not at liberty to contract with others respecting the use to which he may subject his property* [or use to employ his time or talents], *or the manner in which he may enjoy it. The legislature may prescribe the form in which contracts shall be executed to be valid or binding, but it cannot limit the rights of parties, to incorporate into their contracts, otherwise valid, such terms as may be mutually satisfactory to them.'* . . . The right of one to sell his time and his talents is the same, and as inalienable as the right of the owner of any other property to contract respecting the use, sale, or enjoyment thereof. This right of contract, of course, is subject to such reasonable police regulations as may be enacted to promote the public good. In determining the effect of a statute which purports to change or limit the right of contract for such purposes, the rules require that such changes or limitations must be expressly declared or reasonably implied from the language used.

I can see no police regulation in the present legislation. It takes on more of the nature of a political ploy than it does of a regulation of health, safety, or morals.

In California the legislature enacted a law which provided that all liens of materialmen and laborers shall be payable in money. In the case of *Stimson Mill Co. v.*

1. 93 Utah 32, 70 P.2d 871 (1937).

*Braun*[2] the contractor had agreed with the owner to take certain unused material in part payment of his contract. On trial the court held that the contract violated the statute. The Supreme Court of California reversed the trial court and said:

. . . The provision in the constitution respecting mechanics' liens (article 20, § 15) is subordinate to the declaration of rights in the same instrument, which declares (article 1, § 1) that all men have the inalienable right of 'acquiring, possessing and protecting property,' and in section 13, that no person shall be deprived of property 'without due process of law.' The right of property antedates all constitutions, and the individual's protection in the enjoyment of this right is one of the chief objects of society. He has the right to enjoy his property and improve the same according to his own desires, in any way consistent with the rights of others, subject only to the just demands of the state. This right is invaded if he is not at liberty to contract with others respecting the use to which he may subject his property, or the manner in which he may enjoy it. The legislature may prescribe the form in which contracts shall be executed in order that they may be valid or binding, but it cannot limit the right of parties to incorporate into their contracts respecting property, otherwise valid, such terms as may be mutually satisfactory to them.[3]

Not only should a person be entitled to contract with whom he or she pleases, but also the person should be the sole judge of whether or not an employee is a satisfactory one. No two people have identical abilities in any given field of endeavor, and the employer should be able to pay to each one such remuneration as they may mutually agree upon.

The statute involved in the instant matter would permit the employer to pay different wages to two men engaged in the same work and would also permit different wages to be paid to two women doing the same work, but does not permit different wages if the sexes are different. That does not make such sense to me.

What type of discipline could exist in the Beehive organization if an unwanted employee is kept on the payroll by the authority of the Industrial Commission and backed up by order of the courts? This is a sure way to destroy a private enterprise and should not be condoned by this Court.

In our system of free enterprise, competition is such that any private business organization must seek out the best and most efficient employees if it is to survive and prosper. If a prospective employee can fit into an organization and do a better job than another employee, then that prospect will certainly be hired; and it would not matter whether he or she was black or white, male or female, Jew or Gentile, Catholic or Protestant.

The legislature would do well to permit people to run their own business enterprises without too much interference and allow all men the right to acquire property lawfully and to enter into contracts freely with all whom they may find agreeable.

The case of *Kopp v. Salt Lake City*[4] was brought under the statute here involved. It was not necessary to decide the constitutionality of the statute then because we held that there was no discrimination involved in that case; and we do not hold a statute to be unconstitutional if the matter can otherwise be determined.

I would reverse the judgment of the lower court and award costs to the appellant.

CROCKETT, J., concurs in the views expressed in the dissenting opinion of ELLETT, C. J., insofar as it is consistent with his dissent below.

---

**2.** 136 Cal. 122, 68 P. 481 (1902).

**3.** See *Snell v. Bradbury,* 139 Cal. 379, 73 P. 150 (1903); see also *Chavez v. Sargent,* 52 Cal.2d 162, 339 P.2d 801, 837 (1959).

**4.** 29 Utah 2d 170, 506 P.2d 809 (1973).

CROCKETT, Justice (dissenting).

In preface to what is said below I assert my unreserved commitment to and belief in the justice of the principle that every person should be entitled to enjoy equally all rights, privileges and immunities consistent with recognizing and respecting equally basic rights in others; and that this should include equal pay for equal work, and equal recognition and reward for merit, without discrimination based only on sex.[1] However, this right, just like all rights, is not a sole and absolute right to be asserted and exercised to the exclusion of all others, but should be considered and applied in its proper relationship to them. This is pointed out by Chief Justice Ellett in relation to the employer's right in his property, which includes the right to contract with respect thereto.

It seems to me unnecessary to confront the issue as to the unconstitutionality of the statute and to strike it down entirely. I say this because it is our duty to so interpret and apply a statute that it is constitutional if that can be done. The statute in question has a salutary purpose in harmony with Sec. 1 of Art. IV of our Utah Constitution. If it is applied in a manner consistent with recognizing other equally important constitutional rights, it can stand and carry out that purpose wherever it is properly applicable.

I make no pretensions to the artfulness to persuade any aficionado on either side of the subject of "women's lib" which seems to be so controversial of late. But it is my impression that we are often confusing the allowances that must be made because of the obvious "differences" between the sexes with claimed "inequalities." Notwithstanding the fairness and justice of honoring the equalities referred to above, the fact must be recognized and dealt with that there are many and multiplex (not just one) differences between the sexes; and that the fact that there are such innate differences is one

of the simple yet complex facts of life that in a less sophisticated (or less confused) era was something to be accepted, appreciated and honored.

Correlated to this was the realization that those differences in some instances make one sex more suitable than the other for certain activities and occupations. Witness, e. g., some of the more violent aspects of living, such as in fighting a war, or in the rougher competitive sports, in which such differences are so obvious. Further note that a plumber, a welder, or a brick layer, may both want and need a helper with certain qualifications, one of which is that he be of the male sex. Conversely, a dentist or a doctor may for his own reasons prefer a nurse or an assistant of the female sex. Similarly, though perhaps not for exactly the same reasons, a young man may be under some sort of an illusion that he wants to choose his partner for the Junior Prom partly on the basis of sex.

It is of the utmost importance to keep in mind that the sustaining of our system of individual freedoms depends upon the preservation of individual initiative and free enterprise; and that this in turn depends upon an employer's right to own and hold property, to enter into contracts,[2] and to operate his business according to his own judgment as to the most efficient and desirable way to assure its success.

The main opinion places considerable emphasis on the proposition that the determination of this personal relationship and the rights dependent thereon is equitable in nature.[3] Accepting that proposition, the interests of justice require that the total situation should be analyzed in a sensible and practical way, including not only the right of non-discrimination on account of sex that the employee is entitled to, but with due consideration for other rights and interests, including the rights of the employer, and the welfare of society generally. It is my

1. Utah Const., Art. IV, Sec. 1; U.C.A.1953, 34–35–1 et seq.

2. Art. I, Sec. 1, Utah Const.; *Golding v. Schubach Optical Co.,* 93 Utah 32, 70 P.2d 871.

3. Footnote 2, main opinion.

opinion that if those interests are weighed in their proper relationship to each other, and to the evidence in this case, considerations of justice and equity lead to the conclusion that what happened to Ms. Alsop was the result of other factors involved in her employment and her relationship to it, but was not attributable to her employer unlawfully discriminating against her on account of sex; and that therefore that finding and the judgment thereon should not be permitted to stand.