951 F.2d 1259
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 FEDERAL DEPOSIT INSURANCE CORPORATION, a corporation
organized under the laws of the United States, and
acting in its corporate capacity,
Plaintiff-Appellant,
v.
ST. PAUL FIRE AND MARINE INSURANCE COMPANY, a Minnesota
corporation, Defendant-Appellee.
 No. 91-4035.
 United States Court of Appeals, Tenth Circuit.
 Dec. 24, 1991.
 
 Before STEPHEN H. ANDERSON, BARRETT and BRORBY, Circuit Judges.
 ORDER AND JUDGMENT*
 BARRETT, Senior Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Plaintiff Federal Deposit Insurance Corporation (FDIC) appeals from the district court's Memorandum Opinion and Order denying summary judgment for the FDIC and granting summary judgment for Defendant St. Paul Fire and Marine Insurance Company (St. Paul). The FDIC sought a declaratory judgment that an insurance policy issued by St. Paul provided coverage to a bank for which the FDIC is the receiver. The specific issue presented is whether the insured bank complied with the policy provisions regarding notice, thereby invoking coverage under a "claims made" directors' and officers' liability policy issued by St. Paul to the bank. Because we conclude that the required notice was not given to St. Paul, we affirm the judgment of the district court.
 
 
 3
 The Family Bank (Bank) was a financial institution headquartered in Ogden, Utah. On February 19, 1986, James Brown, the Bank's president and a member of its board of directors, discovered an unusually large balance in the Bank's computer suspense account. Subsequent inquiry revealed that Val Costley, the manager of the Roy City, Utah, branch of the Bank, had embezzled over four million dollars.
 
 
 4
 At the time, the Bank maintained two insurance policies with St. Paul. One was a banker's blanket bond (Bond), providing coverage of 1.4 million dollars for losses caused by intentional wrongdoing of Bank employees. The other policy was a directors' and officers' liability policy (Policy), providing coverage of one million dollars for negligent acts, errors, omissions, or breaches of duty by the Bank's officers or directors. The Policy was a "claims made" insurance policy, requiring that the claim be made during the policy period to invoke coverage.
 
 
 5
 After discovery of the embezzlement, a written Bond claim was submitted to St. Paul by the Bank's attorney. In a letter dated February 25, 1986, accompanying the partial proof of loss on the Bond, the Bank's attorney wrote, "It is imperative that this claim be paid immediately to avoid a possible run on the Bank, adverse action by state and federal regulatory agencies and additional potential claims under your Directors' and Officers' Liability Policy No. 4008C0523." Appellant's App. at 141 (emphasis added). St. Paul's corporate counsel recommended payment of the Bond, and 1.4 million dollars was wired to the bank within a few days after the embezzlement was discovered.
 
 
 6
 In spite of St. Paul's prompt payment of the Bond, the Bank failed and was closed on March 28, 1986. The FDIC was appointed as receiver. The FDIC then assumed any causes of action against the Bank's former directors and officers and any rights under the Policy.
 
 
 7
 The original Policy period ran from March 17, 1985, to March 17, 1988. On April 2, 1986, St. Paul sent notice to the Bank exercising its option to cancel the Policy effective thirty days after the Bank's receipt of the notice, which was May 5, 1986. The FDIC then exercised the Policy provision permitting it to purchase an extension of the policy for one year. The extended Policy expired on May 5, 1987.
 
 
 8
 On January 25, 1989, the FDIC notified Brown that the FDIC asserted that he had been negligent in failing to prevent the embezzlement or discover it sooner. On March 27, 1989, the FDIC filed a separate action against Brown for breach of fiduciary duties and negligence because of the embezzlement. In this action the FDIC seeks a declaratory judgment that St. Paul is liable for any judgment against Brown up to the Policy limit of one million dollars.
 
 
 9
 The FDIC asserts that notice was given during the Policy period by the letter dated February 25, 1986, which specifically referred to the Policy and indicated that claims might arise from the embezzlement. The FDIC contends that as a consequence of the letter, St. Paul conducted an investigation, thereby acquiring actual knowledge of the circumstances on which the claims of negligence and breach of duty against Brown were based.
 
 
 10
 St. Paul contends that notice was not given during the Policy period and denies any obligation under the Policy. St. Paul rejects any suggestion that constructive knowledge can substitute for written notice as required by the Policy and denies actual knowledge of any negligence or breach of duty on the part of Brown.
 
 
 11
 In the section of the Policy entitled "Insuring Agreements," Section III sets forth the requirements for invoking coverage. That section states:
 
 
 12
 This Policy applies to any negligent act, any error, any omission or any breach of duty which occurs:
 
 
 13
 (1) During the policy period, and then only if claim is made or suit is brought during the policy period. If, during the policy period, the Insured shall have knowledge or become aware of any negligent act, any error, any omission or any breach of duty and shall, during the policy period, give written notice thereof to the Company, then such notice shall be considered a claim hereunder; or
 
 
 14
 .............................................................
 
 
 15
 ...................
 
 
 16
 * * *
 
 
 17
 Attach. to Opening Br., A-15. Here, no claim was made or suit was brought against the Bank, so the applicable provision of Section III is the one providing for coverage if the insured gives written notice during the Policy period of any negligent act, any error, any omission, or any breach of duty.
 
 
 18
 When reviewing a district court order granting or denying summary judgment, this court applies the same standard used by the district court, "that is, whether there is a genuine issue of material fact and whether the movant is entitled to judgment as a matter of law." Burnette v. Dow Chem. Co., 849 F.2d 1269, 1273 (10th Cir.1988). The parties agree that Utah contract law applies. The determination of whether a contract is ambiguous is a question of law. Morris v. Mountain States Tel. & Tel. Co., 658 P.2d 1199, 1200 (Utah 1983). Utah state contract law requires enforcement of an unambiguous contract. E.g., Valley Bank & Trust Co. v. U.S. Life Title Ins. Co., 776 P.2d 933, 936 (Utah 1989) (if terms of title insurance policy are clear and unambiguous, those terms will be interpreted in accordance with their plain and ordinary meaning).
 
 
 19
 Contrary to the FDIC's argument, the February 25, 1986 letter accompanying the proof of loss on the Bond did not constitute the notice required by the Policy. The letter did not notify St. Paul of any act of any director or officer that would give rise to a claim. The letter merely mentioned the Policy without supplying any information about any directors or officers of the Bank.
 
 
 20
 The general information of the embezzlement and financial losses is insufficient to trigger coverage of the "claims made" Policy. See American Casualty Co. v. FDIC, 944 F.2d 455, 460 (8th Cir.1991) (information of bank's financial difficulties, including a cease and desist order, provided to insurer during policy renewal process deemed insufficient to trigger coverage under the "claims made" policy). Where there is a right under a "claims made" policy to seek coverage for inchoate claims, notice of the threatened legal action must be given during the policy period or insurance coverage will be denied. Winkler v. National Union Fire Ins. Co., 930 F.2d 1364, 1367 (9th Cir.1991) (applying California law).
 
 
 21
 In this case, the information conveyed to St. Paul that the Bank had suffered an embezzlement by an employee did not fulfill the Policy requirements for notification of acts giving rise to a claim. Notice of the embezzlement did not predict or threaten formal proceedings against any of the Bank's directors or officers to hold them personally liable. The FDIC admitted in its case against Brown that discovery of the embezzlement did not necessarily expose Brown's culpable conduct. Appellant's App. at 432. Furthermore, notice under the Bond claim is not sufficient for the required notice under the Policy. See California Union Ins. Co. v. American Diversified Sav. Bank, 914 F.2d 1271, 1276-78 (9th Cir.1990) (applying California law) (no claim was made against the bank under a "claims made" policy by certain letters to the bank from banking regulatory authorities, neither threatening formal proceedings nor proposing to hold officers and directors of a failed bank personally liable), cert. denied, 111 S.Ct. 966 (1991).
 
 
 22
 Because written notice as required by the Policy was not given during the Policy period, St. Paul is not required to provide coverage for the claims made against Brown.
 
 
 23
 The FDIC also asserts that Utah Code Ann. § 31A-21-312 precludes summary judgment because St. Paul has not demonstrated prejudice by the failure to give notice. Utah Code Ann. § 31A-21-312 states:
 
 
 24
 (1) Every insurance policy shall provide that:
 
 
 25
 ....
 
 
 26
 (b) failure to give any notice or file any proof of loss required by the policy within the time specified in the policy does not invalidate a claim made by the insured, if the insured shows that it was not reasonably possible to give the notice or file the proof of loss within the prescribed time and that notice was given or proof of loss filed as soon as reasonably possible.
 
 
 27
 (2) Failure to give notice or file proof of loss as required by Subsection (1)(b) does not bar recovery under the policy if the insurer fails to show it was prejudiced by the failure. This subsection may not be construed to extend the statute of limitations applicable under Section 31A-21-313.
 
 
 28
 According to the FDIC, St. Paul cannot deny coverage even if notice of the claim against Brown was filed after expiration of the Policy, so long as it was not reasonably possible to give the notice, the notice was given as soon as reasonably possible, and St. Paul was not prejudiced by the late notice.
 
 
 29
 The statute cannot be invoked to permit notice given after expiration of the Policy to extend coverage of the Policy because to do so would violate constitutional protections against impairment of contract. The statute became effective on July 1, 1986. 1985 Utah Laws 242, § 26. The legislation did not change an existing law, but enacted a new statute. 1985 Utah Laws 242. The Policy was made on March 17, 1985, and extended for one year on or shortly after May 5, 1985, until May of 1986. Therefore, the statute cannot be applied to the Policy because the statute "changes the meaning of [the] contract and deprives [St. Paul] of a contractual right which [it] would have had under the prior statutory scheme." Washington Nat'l Ins. Co. v. Sherwood Assocs., 795 P.2d 665, 670 (Utah App.1990). "Impairment of obligation" provisions of the Constitutions of the United States and Utah prevent impairment of contracts by statutory changes made after the contract was formed. Beehive Medical Elec., Inc. v. Industrial Comm'n, 583 P.2d 53, 60-61 (Utah 1978); see also U.S. Const. Art. I, § 10, cl. 1; Utah Const. art. I, § 18. Hence, the provisions of Utah Code Ann. § 31A-21-312 cannot be applied to the Policy.
 
 
 30
 The judgment of the United States District Court for the District of Utah is AFFIRMED.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3